UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

                                                    Case No. 09-20415
v.                                                  Honorable David M. Lawson

THEODORE COOPER STEWART,

          Defendant.
_____/

**OPINION AND ORDER DENYING MOTION TO SUPPRESS EVIDENCE**

      Defendant Theodore Cooper Stewart stands charged by a grand jury with transportation of child pornography in violation of 18 U.S.C. § 2252(a)(1). He moves to suppress the evidence of that crime, which was discovered when his two computers were seized at the Detroit Metropolitan Airport port of entry in Romulus, Michigan as he reentered the United States when returning from Asia. Stewart argues that although the initial inspection by U.S. Customs officials at the border entry was valid, the seizure of his laptop computers and examination of one of them the next day at another location amounted to an extended border search requiring a level of reasonable suspicion, which was lacking. He contends, therefore, that the seizure was unreasonable and prohibited by the Fourth Amendment. The Court conducted an evidentiary hearing on the motion on March 18, 2010 and now concludes that the inspection of Stewart's computers at the forensic facility of the Bureau of Customs and Immigration Enforcement (ICE) in Detroit was reasonable within the meaning of the Fourth Amendment. The motion to suppress, therefore, will be denied.

I.

Marvin Steigerwald testified at the evidentiary hearing that he was a Customs and Border Patrol officer on duty at the Wayne County Metropolitan International Airport in suburban Detroit on May 9, 2009. At approximately 2:00 p.m., when passengers on an international flight arriving from Japan were debarking, Steigerwald was engaging in his usual activity of talking with passengers at the baggage carousal – choosing them at random – and asking them for their passports and customs declarations. Steigerwald said that when he encountered defendant Stewart, Stewart was "standoffish and confrontational." Stewart then was referred to the secondary area so his baggage could be examined.

Among the items of interest in Stewart's belongings were two laptop computers, a digital camera, and three computer memory sticks, sometimes called "thumb drives." The two laptops were a Sony VAIO and a Twinhead. Steigerwald testified that these kinds of items usually are examined for images and videos. There are no forensic examination tools available at the airport inspection site. Instead, the examiner proceeds as an ordinary user would search the contents of a computer. Steigerwald powered up the Sony and found about a dozen photos of naked children in promiscuous poses, some photos focusing on their genitals. Steigerwald believed some of the subjects were under ten years old. He stopped his investigation and called in an ICE agent to proceed further.

Andre Young was the ICE agent on duty that day and responded to the call at the airport. He characterized the images on the Sony as depicting nude individuals under sixteen years old. Young testified that the women in the photos were Asian, some could have been adults although one or two were undoubtedly under sixteen or fourteen years old, and they were naked although the

focus of the photos was not "necessarily on the genitals." He said he could not determine if the images constituted child pornography.

Both Steigerwald and Young testified that the Twinhead had a dead battery and could not be activated. The Twinhead's power cord did not have a domestic electrical adaptor, although at the hearing Young discovered that he probably could have taken the adaptor from the Sony and used it to power up the Twinhead at the airport. In any event, the agents concluded that the Twinhead could not be accessed at the airport, so Young made a decision to transport it to the local ICE headquarters office in Detroit – about twenty miles away – where it could be examined by a forensic expert. Steigerwald returned the camera and thumb drives to Stewart after they were examined and found to contain no contraband. Young told Stewart (who was present when the Sony was examined) that the computers would be detained and Stewart was free to go.

Young transported the two laptops to the Detroit office sometime between 4:00 and 5:00 p.m. that same day. Forensic analyst John Edwards logged them in that afternoon and conducted his examination the following day. The examination of the Twinhead required removal of the hard drive from the computer case. The government alleges that Edwards found images of child pornography on the Twinhead. Edwards then stopped his review, and Young obtained a warrant to conduct a thorough search of both computers.

II.

The defendant contends that seizing the computers from the airport and transporting them to the ICE office in Detroit was the equivalent of an extended border search that required justification by some level of government suspicion, which was not present in this case. He argues that the evidence of child pornography found on the Twinhead computer was discovered in violation

of the Fourth Amendment and therefore must be excluded from trial. The government contends that the examination of the computers at the Detroit ICE office was nothing more than a continuation of the original border inspection and seeks to justify it by analogizing to cases authorizing serial entries onto premises under the authority of a single search warrant. The Court cannot accept either of these arguments in full.

It is well established that the Fourth Amendment prohibits the government from conducting "unreasonable searches and seizures." U.S. Const. amend. IV. A search conducted without a warrant is "*per se* unreasonable under the Fourth Amendment, – subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnotes omitted); *see also United States v. Jenkins*, 92 F.3d 430, 436 (6th Cir. 1996).

A search conducted at a United States border – or the functional equivalent of a border, *see Almeida-Sanchez v. United States*, 413 U.S. 226, 272-73 (1973); *see also United States v. Lawson*, 461 F.3d 697, 700 (6th Cir. 2006) – is one of those exceptions. "[S]earches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border." *United States v. Flores-Montano*, 541 U.S. 149, 152-53 (2004) (internal quotation marks omitted); *see also United States v. Ramsey*, 431 U.S. 606, 618 (1977). These searches are considered necessary to prevent the introduction of contraband into the country. *United States v. Montoya de Hernandez*, 473 U.S. 531, 537-38 (1985). The Supreme Court has explained that an individual's expectation of privacy is diminished at the border, *id.* at 539-40, and the "Government's interest in preventing the entry of unwanted persons and effects is at its zenith at the international border." *Flores-Montano*, 541 U.S. at 152. Therefore, "[r]outine searches of the

persons and effects of entrants are not subject to any requirement of reasonable suspicion, probable cause, or warrant." *Montoya de Hernandez*, 473 U.S. at 538; *see also Ramsey*, 431 U.S. at 616-19.

In some circumstances, the government must have reasonable suspicion to perform a search at a border. But those instances generally are confined to "highly intrusive searches of the person," such as strip searches or body cavity searches, *see Montoya de Hernandez*, 473 U.S. at 540 n.3, searches carried out in a "particularly offensive manner," or searches that are destructive of property, *Flores-Montano*, 541 U.S. at 152, 154 n.2, 155-56; *Lawson*, 461 F.3d at 699-700. The Supreme Court has not determined specifically "'whether, and under what circumstances, a border search might be deemed 'unreasonable' because of the particularly offensive manner in which it is carried out.'" *Flores-Montano*, 541 U.S. at 154 n.2 (quoting *Ramsey*, 431 U.S. at 618 n.13). However, routine searches of a person and his belongings, including closed containers, do not fall into that category. *Lawson*, 461 F.3d at 700; *United States v. Irving*, 452 F.3d 110, 123 (2d Cir. 2006) (finding that "routine border searches of a person's belongings are made reasonable by that person's decision to enter this country").

The Sixth Circuit has not addressed the question whether the contents of a laptop computer may be examined as part of a routine, suspicionless border search. However, other circuits have had little trouble with that idea. For instance, the Ninth Circuit held in *United States v. Arnold*, 533 F.3d 1003, *superseding* 923 F.3d 921 (9th Cir. 2008), that a search of the defendant's computer hard drive was analogous to a standard search of an individual's property and did not require reasonable suspicion when the examination occurred at the functional equivalent of a border. *Id.* at 1009. The Second, Third, and Fourth Circuits have reached similar results. *See United States v. Borello*, 766 F.2d 46, 58-59 (2d Cir. 1985); *United States v. Linarez-Delgado*, 259 F. App'x 506, 508 (3d Cir.

Dec. 19, 2007) (unpublished); *United States v. Ickes*, 393 F.3d 501, 505-07 (4th Cir. 2005) (involving customs officers' discovery of a video of a tennis match that focused excessively on the young ball boy, along with other questionable photos, and the defendant's admission during questioning that he possessed child pornography).

Defendant Stewart does not contend that the examination of the computers and digital media storage devices at the airport offended the Fourth Amendment. However, he argues that the detention of his property became unreasonable when the computers were taken from the airport and transported to a location about twenty miles away for examination the next day.

There comes a point when the passage of time or other circumstances can transform a seizure of property reasonable at its outset into an unreasonable intrusion. *See, e.g., United States v. Place*, 462 U.S. 696, 709 (1983) (holding that the 90-minute detention of luggage at an airport to await the arrival of a drug-detecting dog was unreasonable); *see also United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005) (observing that "while a *Terry* stop may be constitutionally permissible initially, it may become an impermissible 'seizure if it occurs over an unreasonable period of time or under unreasonable circumstances'" (quoting *United States v. Orsolini*, 300 F.3d 724, 729-30 (6th Cir. 2002))). In the context of border crossings, other circuits, notably the Fifth and the Ninth, have developed the concept of "extended border searches," which are removed in time and place from the actual border or its functional equivalent. *See United States v. Niver*, 689 F.2d 520, 526 (5th Cir. 1982) ("The main difference between the functional equivalent of the border search and an extended border search is that the latter takes place after the first point in time when the entity might have been stopped within the country."). The Ninth Circuit explained that "[e]xtended border searches, which 'occur after the actual entry has been effected and intrude more on an individual's normal

expectation of privacy[,] . . . must be justified by "reasonable suspicion" that the subject of the search was involved in criminal activity.'" *United States v. Guzman-Padilla*, 573 F.3d 865, 877-78 (9th Cir. 2009) (quoting *United States v. Alfonso*, 759 F.2d 728, 734 (9th Cir. 1985)).

The defendant cites *United States v. Cotterman*, No. 07-1207, 2009 WL 465028 (D. Ariz. Feb. 24, 2009), as an example of a seizure of a computer at a border that ripened into an "extended border search," which required reasonable suspicion. In that case, the defendant's computers and digital camera were seized at the border crossing on a Friday and transported to a location 170 miles away for a forensic examination, which was not completed until Sunday. The one computer that contained no contraband and the camera were returned on Monday. The court held that the detention of that property over the time and distance involved required reasonable suspicion, which the government did not demonstrate, and the court suppressed the evidence. The court distinguished cases from other circuits upholding searches of computers on which child pornography was found on the basis of the location of the search (at the point of entry – usually an airport) and the time involved (generally a matter of hours and not days).

The defendant makes a valid point here. Removing the laptops from the point of entry into the country and transporting them to a remote forensic laboratory may result in an intrusion greater than one might reasonably expect upon entering or re-entering the United States. A traveler arriving at a border equivalent cannot reasonably expect that her baggage and other property will not be inspected before she is allowed to enter. However, the actual dispossession of a traveler's belongings is different in kind from an inspection of those items, however thorough, at the border. As the Supreme Court explained:

> Particularly in the case of detention of luggage within the traveler's immediate possession, the police conduct intrudes on both the suspect's possessory interest in

> his luggage as well as his liberty interest in proceeding with his itinerary. The person whose luggage is detained is technically still free to continue his travels or carry out other personal activities pending release of the luggage. Moreover, he is not subjected to the coercive atmosphere of a custodial confinement or to the public indignity of being personally detained. Nevertheless, such a seizure can effectively restrain the person since he is subjected to the possible disruption of his travel plans in order to remain with his luggage or to arrange for its return.

*Place*, 462 U.S. at 708 (footnotes omitted). Removal of the computer from the airport to a remote location effectuates that same kind of dispossession.

The defendant's analogy to the extended border search cases therefore is apt. But that does not mean that the subsequent examination of the Twinhead laptop was invalid. The Court believes instead that the ICE agents had reasonable suspicion to believe that the computers – both the Twinhead and the Sony – contained contraband, and the continued detention and examination of those items was reasonable.

"Reasonable suspicion," of course, is more than an ill-defined hunch; it must be based upon "a particularized and objective basis for suspecting the particular person . . . of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-18 (1981); *see Houston v. Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809, 813 (6th Cir. 1999). It requires "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" further investigation. *Terry v. Ohio*, 392 U.S. 1, 21 (1968); *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998). The requisite "level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *McPherson v. Kelsey*, 125 F.3d 989, 993 (6th Cir. 1997). "Moreover, reasonable suspicion can arise from evidence that is less reliable than what might be required to show probable cause." *Houston*, 174 F.3d at 813 (citing *Alabama v. White*, 496 U.S. 325, 330 (1990)); *McPherson*, 125 F.3d at 993.

Agents Steigerwald and Young both testified that they saw images on the defendant's Sony VAIO that they reasonably believed were images of children in sexually explicit poses. Although Agent Young said he could not be sure that the images constituted child pornography, as federal law defines it, the images he saw constituted "a particularized and objective basis for suspecting" that the Sony laptop contained contraband. The defendant's possession of possible contraband on one digital storage medium justified Agent Young's suspicion that other storage media in the defendant's possession likewise might contain contraband. *See United States v. Wagers*, 452 F.3d 534, 540 (6th Cir. 2006) (upholding finding of probable cause to search a home where the defendant had purchased subscriptions to known child pornography websites, but where it was unknown precisely which computer he had used to access those sites). To the extent that the government needed a reason to detain and examine further the Twinhead computer for contraband, the Court finds that the record supports one here. Under the extended border search line of cases, the government needed no more than reasonable suspicion to detain and inspect the computers. *See Alfonso*, 759 F.2d at 734 (finding a border search delayed thirty-six hours was justified by reasonable suspicion under the extended border search rationale). The Court finds that reasonable suspicion existed here. The inspection was conducted within a reasonable time – within twenty-four hours of the impoundment. The defendant has not argued, and the Court does not consider, whether the length of the detention of Stewart's property resulted in a full-blown seizure requiring probable cause. For the purpose of the present motion, the government's actions in this case were reasonable within the meaning of the Fourth Amendment.

III.

The Court finds that the detention and inspection of the defendant's laptop computers did not result in a violation of the Fourth Amendment.

Accordingly, it is **ORDERED** that the defendant's motion to suppress evidence [dkt # 29] is **DENIED**.

It is further **ORDERED** that the final pretrial conference is extended to **May 27, 2010 at 2:00 p.m.**; if the defendant intends to plead guilty under a plea agreement, the plea agreement must be signed on or before **May 26, 2010**; and the trial is adjourned to **June 15, 2010, at 8:30 a.m.**

                      s/David M. Lawson
                      DAVID M. LAWSON
                      United States District Judge

Dated: May 24, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 24, 2010.

                s/Teresa Scott-Feijoo
                TERESA SCOTT-FEIJOO